**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
:
VICTOR PEREZ, :
:
                Petitioner, :      16-CV-2977 (AT) (OTW)
:
    -against- :      **REPORT & RECOMMENDATION**
:
HAROLD GRAHAM, Superintendent, :
:
                Respondent. :
:
-----------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

**To the Honorable Analisa Torres, United States District Judge:**

### I.    Introduction

      Petitioner Victor Perez brings this *habeas corpus* proceeding in accordance with 28 U.S.C. § 2254, seeking to challenge his conviction and sentence on multiple charges relating to a series of rapes and sexual assaults he perpetrated on his daughter over a period of two years, when she was nine and ten years old. Petitioner's judgment of conviction was entered on May 11, 2009, after a jury trial by the Supreme Court of the State of New York, New York County (Kindler, J.). Justice James M. Kindler sentenced Petitioner to an indeterminate term of more than 92 years to life.[1]

---

[1] Specifically, Petitioner was convicted of: Predatory Sexual Assault Against a Child (NY Penal Law § 130.96) (eight counts), Course of Sexual Conduct Against a Child in the First Degree (NY Penal Law § 130.75(1)(a)), Course of Sexual Assault Against a Child in the Second Degree (NY Penal Law § 130.80(1)(a)), Endangering the Welfare of a Child (NY Penal Law § 260.10(1)), Rape in the First Degree (NY Penal Law § 130.35(3)) (five counts), Incest in the First Degree (NY Penal Law § 255.27), Criminal Sexual Act in the First Degree (NY Penal Law § 130.50(3)) (three counts), Sexual Abuse in the First Degree (NY Penal Law § 130.65(3)), and Use of a Child in a Sexual Performance (NY Penal Law § 263.05) (three counts). On April 9, 2015, the Appellate Division, First Department determined that the convictions of Rape in the First Degree under counts 10, 16, 22, and 27 of the indictment, and the convictions Criminal Sexual Assault in the First Degree under counts 9, 17, and 23, were lesser included offenses of the predatory sexual assault convictions, and, accordingly, vacated and dismissed them. (S. 27–29.) *See People v. Perez*, 87 A.D.3d 930 (1st Dep't 2011); *see also* Decl. in Opp'n ¶ 5, ECF 26.

In his *habeas* petition, Petitioner asserts the following claims, alleging that his constitutional rights were violated because:

a) Petitioner's conviction was obtained by use of evidence obtained pursuant to an "unlawful arrest;"

b) Petitioner's confession was involuntary because it was obtained by coercive tactics and police officers' continued questioning of him, despite his request to "call someone;"

c) Petitioner's conviction was obtained by use of evidence obtained pursuant to an unconstitutional search and seizure; and

d) Petitioner's trial and appellate counsel were ineffective.

For the reasons set forth below, I respectfully recommend that the petition be denied. Additionally, Petitioner should be denied a certificate of appealability because he has failed to make the substantial showing of the denial of a constitutional right required by 28 U.S.C. § 2253(c)(2).

## II. Facts

### A. Facts Giving Rise to Petitioner's Conviction[2]

On or around October 7, 2007, after a weekend visitation with her father, Petitioner's 10-year old daughter, Danielle, told her mother that Petitioner had been sexually abusing her and had sexually abused her that weekend. (T. 50, 57–58, 60.) Danielle's mother immediately brought her to the pediatric emergency room of St. Luke's Roosevelt Hospital. (T. 15, 60.)

Detective David Cruz interviewed Danielle and her mother at the hospital early in the morning of October 8, 2007. (Decision and Order of Justice Kindler, May 22, 2009 at 2 ("Ex. 4"); H. 94.) Danielle told Detective Cruz that her father had put his penis in her vagina and made her wear women's shoes the night before. (Ex. 4 at 2; H. 94.) Detective Cruz obtained Petitioner's address from Danielle's mother. (Ex. 4 at 2; H. 94–95.) The attending physician confirmed that Danielle had been vaginally and anally penetrated. (T. 121–26.)

A few hours later, at around 5:00 a.m., Detective Cruz went to Petitioner's home and called the business phone number displayed on Petitioner's car outside of his home. Detective Cruz told Petitioner that someone was trying to break into his car and told him to bring the car's paperwork. (Ex. 4 at 2; H. 94–96.) When Petitioner arrived and showed Detective Cruz his

---

[2] Citations preceded by "H." refer to the hearing minutes of Petitioner's suppression hearing; those preceded by "T." refer to the trial minutes of Petitioner's trial; those preceded by "S." refer to the sentencing minutes; and those preceded by "J." refer to the transcript of jury selection prior to the start of Petitioner's trial. (*See* ECF 17.) Citations to Exhibits ("Ex.") refer to the Exhibits to Respondent's Memorandum of Law in Opposition, ECF 27.

2

driver's license, Detective Cruz handcuffed him and drove him to the Bronx Special Victims Unit Detective Squad. (Ex. 4 at 2; H. 96–98.) Detective Cruz did not tell Petitioner why he was being arrested, asked no questions and made no threats or promises. (Ex. 4 at 2; H. 100–01.) By 6:00 a.m., Petitioner was uncuffed and placed in a holding cell. (Ex. 4 at 2; H. 99.)

At around 9:30 a.m., Bronx Special Victims Squad Detectives Freddy Perez and Camilo Delgado interviewed Danielle and learned that Petitioner had been raping her for two years, since she was nine. Danielle told the detectives that Petitioner videotaped the rapes, took photographs of her dressed in lingerie and high heels, and showed her websites purporting to show fathers having sex with their daughters. (Ex. 4 at 3; H. 6–7, 44.)

Around 10:45 a.m., Detective Perez and Detective Delgado took Petitioner, uncuffed, to an interview room, where he used the bathroom and was offered coffee and a donut, which Petitioner refused. (Ex. 4 at 3; H. 9–10, 45.) Before the interview began, Detective Perez read Petitioner his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), after which Petitioner signed an advice of rights sheet. (Ex. 4 at 3; H. 11–18, 45–46, 51–53.) After questioning began, and after Petitioner signed the advice of rights sheet, Petitioner provided an oral statement and then wrote out and signed a written statement around 11:30 a.m. (Ex. 4 at 3–4; H. 21–25, 56–58, 88.) During this interview, which lasted until around noon, Petitioner consented to a search of his home for, *inter alia*, his laptop and video recording equipment, signed a consent for police to search the contents of those items, and told the detectives where those items could be found. (Ex. 4 at 4–5; H. 26–32, 59–65, 79–80.) Petitioner consented to provide a DNA sample from his mouth. (Ex. 4 at 4–5; H. 84–85, 89–91.) The police also obtained a search warrant to access the information stored on Petitioner's computer. (Ex. 4 at 8; H. 154–56.)

The police searched Petitioner's apartment around 1:00 p.m. and recovered a laptop, video recorder, and a digital camera, along with lingerie and high heeled shoes that Petitioner had forced Danielle to wear. (Ex. 4 at 5; H. 33–35; T. 77–78.) After searching Petitioner's computer, video recorder, and camera, the NYPD Computer Crime Squad recovered: 41 different videos of Petitioner engaged in a variety of sexual acts with Danielle; 29 digital images—of Danielle partially clad in adult clothes—in a folder labeled "All Mine;" and 14 photos of Danielle partially clothed, in a folder labeled "October 7, 2007." (Ex. 4 at 8; T. 79–89.)

Later that evening, Petitioner participated in a videotaped interview with Detective Delgado and Assistant District Attorney Shareema Gadson-Shaw in which he was read his rights again, and in which he admitted, again, to raping his daughter. (Ex. 4 at 6–8; H. 130–38.)

## B. State Court Proceedings

### 1. Trial Proceedings

Petitioner was indicted on November 16, 2007. His trial counsel, William T. Martin, filed an omnibus motion on March 13, 2008, seeking: 1) release of the grand jury minutes; 2) *in camera* inspection of the grand jury minutes and dismissal of the indictment on grounds that

3

the evidence was insufficient to support the charges against him; 3) a bill of particulars and additional discovery; and 4) suppression of Petitioner's statements.[3] (Omnibus Motion, Ex. 1.)

On or around April 30, 2008, Justice John S. Moore granted Petitioner's request for an *in camera* review of the grand jury minutes. Justice Moore reviewed the grand jury minutes and found them sufficient to support the indictment. He further denied the request for release of the grand jury minutes, granted in part and denied in part various requests for discovery, denied a request to dismiss or reduce the charges in the indictment, denied the prosecution's request to preclude Petitioner from offering alibi testimony, and granted a suppression hearing on consent. (Order of Justice Moore, April 30, 2008, Ex. 3.)

Justice Kindler held a suppression hearing from April 6, 2009 to April 8, 2009. (Ex. 4 at 1.) At the suppression hearing, Detectives Perez, Cruz, and John Timpanaro and ADA Gadson-Shaw testified on behalf of the prosecution. (Ex. 4 at 1; H. 5–152, 276–99.) Petitioner testified as well. (Ex. 4 at 1; H. 156–273.) Detective Cruz testified that he interviewed Danielle, her mother, and medical personnel at the hospital in the early hours of October 8, 2007, arrested Petitioner, and later in the afternoon brought Petitioner to the Special Victims Unit where Petitioner was interviewed by Detectives Delgado and Perez. (Ex. 4 at 1–2, 6–7; H. 94.) Detective Perez testified that he advised Petitioner of his rights, obtained Petitioner's signed advice of rights form, memorialized Petitioner's responses that he understood his rights, and participated in the morning interview of Petitioner where Petitioner made oral and written statements (which Petitioner moved to suppress), and consented to the searches that Petitioner also challenged. (Ex. 4 at 3–5; H. 11–88.) Detective Timpanaro testified that he transported Petitioner to Central Booking with his partner, Detective Santiago. (Ex. 4 at 6; H. 279–80.) ADA Gadson-Shaw testified that she conducted the video interview of Petitioner in the evening of October 8. (Ex. 4 at 6–7; H. 130–38.) The prosecution witnesses' testimony collectively covered the events leading to Petitioner's allegedly unlawful arrest, the allegedly unlawful searches, and his allegedly coerced statements. (Ex. 4 at 1–5; H. 5–152.) Petitioner's videotaped interview was also played in open court, and Petitioner's written statement was admitted as an exhibit. (Ex. 4 at 6–7; H. 56, 137–39.) On May 22, 2009, Justice Kindler issued a written opinion providing his reasoning for his oral ruling denying Petitioner's suppression motion in all respects. (Ex. 4.) Justice Kindler held that the prosecution witnesses were credible and found that Petitioner's testimony was inconsistent with the prosecution witnesses' testimony as well as his own videotaped statement. (Ex. 4 at 9.) Specifically, Justice Kindler found Petitioner to be "composed, remorseful and cooperative" in the 40-minute videotaped interview, and found his testimony at the suppression hearing to be inconsistent and evasive. (Ex. 4 at 9.)

Trial began on April 15, 2009, before Justice Kindler. (J. 1.) At trial, the jury heard testimony from Danielle, her mother, Detective Perez, the doctor who examined Danielle in the

---

[3] Although Petitioner's omnibus motion only sought suppression of Petitioner's statements and referenced *Miranda v. Arizona*, 384 U.S. 436 (1966) and *People v. Huntley*, 15 N.Y.2d 72 (1965) as grounds for suppression, the transcript of the three-day suppression hearing reveals that Justice Kindler considered the admissibility of Petitioner's statements and the other evidence obtained from Petitioner and his home, and the validity of each of those searches.

emergency room on October 7, 2009, and the doctor who analyzed the semen on Danielle's clothing from the last time her father raped her. (T. 6, 34, 75, 114, 127.) The jury viewed several, but not all, of the 41 videos and more than 30 photos that were recovered from Petitioner's laptop and video camera. (T. 5–152.) Petitioner exercised his right not to testify. (T. 152–53.) Neither his written statement nor his videotaped oral statements were admitted at trial. (Ex. 4 at 10.)

On April 23, 2009, Justice Kindler charged the jury, (T. 185–254,) which deliberated for only a few hours before returning a guilty verdict on all 27 counts that the prosecution took to trial. (T. 259–68.)

Petitioner was sentenced on May 11, 2009. (S. 27–29.) The prosecution sought the maximum sentence for Petitioner, arguing that it was 187 years to life. (S. 12–16.) After hearing victim impact statements from Danielle and her mother, defense counsel argued that Petitioner had declined an opportunity to plead guilty that would have exposed him only to a 20-year sentence of incarceration, that Petitioner had no prior criminal history, and that he had previously been sexually abused as a child by his mother. (S. 16–19, 20–23.) Petitioner declined to make a statement at sentencing. (S. 23.) After making several factual findings on the record, Justice Kindler sentenced Petitioner to an indeterminate sentence of approximately 92 years to life. (S. 22–30.)

### 2. Direct Appeal[4]

On May 3, 2009, Petitioner filed a motion, *pro se*,[5] to set aside the verdict, which was denied orally on May 11, 2009, just before sentencing. (Notice of Motion to Set Aside Verdict, Ex. 5; S. 2–11.) The motion to set aside the verdict raised several issues that had been considered and decided at the suppression hearing, and also many issues raised in the instant *habeas* petition. (S. 2–11.)

On June 6, 2009, Petitioner's trial counsel filed a notice of appeal. (Notice of Appeal, Ex. 6.) Petitioner's appellate counsel corresponded with Petitioner on the substance of his appeal (*see* Correspondence, Exs. 7–9) and raised on direct appeal a claim of trial counsel's ineffective assistance of counsel, a claim concerning Petitioner's arrest and admissibility of evidence, and claims concerning the length of his sentence. (Exs. 7–9.) On January 24, 2011, Petitioner sought leave to file a *pro se* supplemental brief, which was denied on April 12, 2011. (Affirmation in Suport of Motion to File a *Pro Se* Supplemental Brief, Ex. 14; Order of the Appellate Division, First Department, Ex. 15.) On July 27, 2011, Petitioner filed a motion for reconsideration, in which he identified with specificity the additional issues he sought to raise, which centered primarily on his custodial interrogation and the admissibility of his statements and the evidence seized from his home. (Notice of Motion for Reconsideration, Ex. 16.) On September 27, 2011, the Appellate Division, First Department denied Petitioner's application, modified the judgment of conviction regarding certain lesser included offenses, and denied the other claims raised on

---

[4] Respondent's Declaration in Opposition, ECF 26, sets forth a more detailed procedural history.

[5] Although Petitioner had both trial and appellate counsel, he filed the motion to set aside the verdict *pro se*.

direct appeal. *See People v. Perez*, 87 A.D.3d 930, 931–32 (1st Dep't 2011). The New York Court of Appeals denied Petitioner's application for a certificate of leave to appeal on June 12, 2012. *People v. Perez*, 19 N.Y.3d 966 (2012).

### 3. Other Post-Conviction Proceedings

On March 31, 2013, Petitioner filed a *pro se* motion to vacate his conviction under N.Y. Crim. Proc. Law § 440.10. (Notice of Motion to Vacate Judgment, Ex. 19.) Justice Kindler, who presided over Petitioner's suppression hearing and trial, summarily denied the motion in all respects on December 23, 2013. (Decision and Order of Justice Kindler, Ex. 20 at 17.) The Appellate Division, First Department denied Petitioner's request for leave to appeal on May 29, 2014. (Certificate Denying Leave, Ordered by Justice Leland G. DeGrasse, Ex. 21.)

On July 23, 2014, Petitioner filed a petition for a writ of error *coram nobis* with the Appellate Division. (Notice of Motion For Writ of Error *Coram Nobis*, Ex. 22.) The petition contended that he was denied effective assistance of appellate counsel, and attached the entirety of his appellate brief in support. (Ex. 22 at 1–6.) On April 9, 2015, the Appellate Division denied Petitioner's *coram nobis* application, *People v. Perez*, 2015 N.Y. Slip Op. 69608 (U), 2015 WL 1566575 (Apr. 9, 2015) (Ex. 24), and on March 2, 2016, the Court of Appeals denied Petitioner's application for a certificate of leave to appeal that decision. *People v. Perez*, 27 N.Y.3d 968 (1st Dep't 2016).

Petitioner filed the instant *habeas* petition on April 21, 2016.

## III. Analysis

### A. Petitioner's Fourth Amendment Claims Are Barred by *Stone v. Powell* and its Progeny

Two of Petitioner's four claims are Fourth Amendment claims: first, that Petitioner was convicted by "use of evidence obtained pursuant to an unlawful arrest," (Petition for Writ of Habeas Corpus at 25, ECF 2 ("Pet.")); and second, that Petitioner's conviction "was obtained pursuant to an unconstitutional search and seizure." (Pet. at 27.) Both of these claims are barred by *Stone v. Powell*, 428 U.S. 465 (1976), and its progeny.

### 1. Applicable Law

The Fourth Amendment to the United States Constitution is the source of federal protection against baseless arrests; the Fourth Amendment requires that there be probable cause to believe that an individual has committed a crime before that individual can be arrested. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *Gerstein v. Pugh*, 420 U.S. 103, 111–12 (1975). Thus, Petitioner's unlawful arrest claim is a Fourth Amendment claim. *See, e.g.*, *Edwards v. Fischer*, No. 01 Civ. 9397 (LAK) (THK), 2002 WL 31833237, at *2 (S.D.N.Y. Dec. 16, 2002) (Katz, M.J.). Such claims, however, cannot ordinarily provide a basis for *habeas* relief. The limited scope of review available in *habeas* proceedings for alleged Fourth Amendment violations was explained by Judge Berman in *Baker v. Bennett*, 235 F. Supp. 2d 298, 306–07 (S.D.N.Y. 2002):

> In *Stone v. Powell*, 428 U.S. 465 , 96 S. Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court established that "where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494, 96 S. Ct. 3037; *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). A federal court "ha[s] no authority to review the state record and grant the writ simply because [it] disagree[s] with the result reached by the state courts" on a Fourth Amendment issue. *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977); see also *Torres v. Irvin*, 33 F. Supp. 2d 257, 264 (S.D.N.Y. 1998) ("A petition for a writ of habeas corpus must be dismissed where it seeks simply to relitigate a Fourth Amendment claim."). The only way a federal court can review such a claim is where "the state has provided no corrective procedures at all," or the state has provided a corrective mechanism, but the defendant is precluded from using that mechanism "because of an unconscionable breakdown in the underlying process." *Capellan*, 975 F.2d at 70 (citing *Gates*, 568 F.2d at 839); *Torres*, 33 F. Supp. 2d at 264.

See also *Hall v. Griener*, No. 00 Civ. 5517 (WHP) (HBP), 2004 WL 350759, at *2–3 (S.D.N.Y. Feb. 24, 2004) (Pitman, M.J.) (Report & Recommendation), *adopted in an unpublished Order* dated June 8, 2004; *Valtin v. Hollins*, 248 F. Supp. 2d 311, 317 (S.D.N.Y. 2003) (Marrero, D.J.); *Torres v. Irvin*, 33 F. Supp. 2d 257, 264 (S.D.N.Y. 1998) (Cote, D.J.).

The Court of Appeals for the Second Circuit has held that New York's procedure for reviewing Fourth Amendment claims is adequate. *See Capellan*, 975 F.2d at 70 n.1; *see also Jones v. Brandt*, No. 09 Civ. 1035 (SAS), 2013 WL 5423965, at *10 n.142 (S.D.N.Y. Sept. 26, 2013) (Scheindlin, D.J.); *Crispino v. Allard*, 378 F. Supp. 2d 393, 413 (S.D.N.Y. 2005) (Sweet, D.J.). New York's procedure has expressly been found to be an adequate vehicle to litigate Fourth Amendment claims asserting that a petitioner was arrested without probable cause. *Johnson v. Graham*, No. 09 Civ. 5838 (SAS) (KNF), 2010 WL 3855286, at *4 (S.D.N.Y. Oct. 1, 2010) (Scheindlin, D.J.).

Because New York's procedure for litigating Fourth Amendment claims is adequate, Petitioner's Fourth Amendment claim is cognizable here only if Petitioner can show that there was "an unconscionable breakdown in the underlying process." *Capellan*, 975 F.2d at 70 (citing *Gates*, 568 F.2d at 840). "An unconscionable breakdown occurs when the state court fails to conduct a reasoned inquiry into the petitioner's claim." *Valtin*, 248 F. Supp. 2d at 317 (citing *Papile v. Hernandez*, 697 F. Supp. 626, 633 (E.D.N.Y. 1988)); *see also Vega v. Artuz*, No. 97 Civ. 3775 (LTS) (JCF), 2002 WL 252764, at *12 (S.D.N.Y. Feb. 20, 2002) (Swain, D.J.) ("[S]ome sort of 'disruption or obstruction of a state proceeding' is typical of [an unconscionable breakdown]." (quoting *Capellan*, 975 F.2d at 70)).

2. Application of Law to Facts

Petitioner claims that his arrest was unlawful because he was induced to leave his home "through a rouse [sic]" by which Detective Cruz called Petitioner's business number on his car, claiming that someone was breaking into his car, and to come to his car with identification. (H. 159–61.) After confirming his identity, Detective Cruz placed Petitioner under arrest, handcuffed him, and drove him to the police station. (H. 160–62.) Petitioner further asserts (and Respondent admits) that he did not receive *Miranda* warnings, nor was he told the reason for his arrest, at the time he was arrested. (H. 161–69.) The trial court addressed both the unlawful arrest and the searches[6] of Petitioner's home and contents of his laptop in a pretrial suppression hearing, in a *pro se* motion to set aside the verdict before sentencing, and on direct appeal, and made reference to such claims summarily denying Petitioner's motion pursuant to N.Y. Crim. Proc. Law § 440.10. (*Perez*, 87 A.D.3d 930; Ex. 20.)

Petitioner has not shown that the state court failed to conduct a reasoned inquiry. In a decision and order dated May 22, 2009, after a three-day suppression hearing covering exactly these issues, Justice Kindler found that there was probable cause to arrest Petitioner based on Danielle's statements alone, and that Petitioner had freely consented to the search of his home and the contents of his laptop. (Ex. 4 at 9–16.) This conclusion is entirely consistent with the case law interpreting the Fourth Amendment (and the extensive record in this case) and does not remotely suggest an unconscionable breakdown of state process. *See generally Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." (internal citation and quotation marks omitted)). In a decision and order denying Petitioner's § 440.10 *pro se* petition, Justice Kindler again noted that Petitioner's testimony at the suppression hearing was "inconsistent, not only with the credible testimony of the detectives and [the Assistant District Attorney who interviewed him], . . . but also with his own videotaped statement." (Ex. 20 at 4.) Petitioner's Fourth Amendment claims were fully and fairly litigated by trial counsel at the suppression hearing, by appellate counsel on direct appeal, and by Petitioner himself in his petitions under N.Y. Crim. Proc. Law §§ 330.30 & 440.10.[7] (*See Perez*, 87 A.D.3d 930; Ex. 4; Ex. 20.)

---

[6] Petitioner's claim based on the searches of his home and contents of his laptop is particularly spurious. Petitioner signed a consent to search form (which he admitted, at the suppression hearing, to signing); consented to the same search during his videotaped interview (which was reviewed by Justice Kindler); and the prosecutors obtained a search warrant to search the same.

[7] Even if Petitioner's claim—that his conviction was obtained by evidence obtained from an "unlawful arrest"—is unexhausted, or is a mixed claim, that claim is denied on the merits. The evidence obtained from Petitioner's arrest consists of the photos, videos, and clothing obtained from Petitioner's apartment, the cheek swab, and Petitioner's written and videotaped statements. If Petitioner's claim is based on the photos, videos, clothing or cheek swab, that portion of the claim is exhausted and barred under *Stone*; if Petitioner's claim is based on his written or videotaped statements, it is also without merit because those statements were not used at trial. Petitioner was convicted largely on the basis of testimony by Danielle and her mother, the testimony of Detective

Accordingly, Petitioner's Fourth Amendment claims are not cognizable on *habeas* review.

### B. The Merits of Petitioner's Remaining Claims

#### 1. Standard of Review

A *habeas corpus* petition is not a vehicle to relitigate every issue previously determined in state court. *Herrera v. Collins,* 506 U.S. 390, 401 (1993). Instead, a state prisoner seeking *habeas* relief under § 2254 must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (1996). The petitioner thus has the burden of proving, by a preponderance of the evidence, that his rights have been violated. *See Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997).

A federal court may grant a writ of *habeas corpus* to a state prisoner where the state court's adjudication of the petitioner's federal claim on the merits:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A decision is an unreasonable application of clearly established federal law if a "state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413; *accord Cullen v. Pinholster*, 563 U.S. 170, 182 (2011); *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (defining "unreasonable application" to require more than clear error). Moreover, a "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411; *accord Lockyer*, 538 U.S. at 75.

---

Perez, and the videos and photos recovered—with Petitioner's consent and a valid search warrant—from Petitioner's apartment.

9

The standard for relief under the Antiterrorism and Effective Death Penalty Act ("AEDPA") "is difficult to meet, because the purpose of AEDPA is to ensure that federal *habeas* relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Greene v. Fisher*, 565 U.S. 34, 43 (2011) (internal quotation marks omitted); *accord Metrish v. Lancaster*, 569 U.S. 351, 356–59 (2013); *see Burt v. Titlow*, 571 U.S. 12, 19 (2013) ("AEDPA erects a formidable barrier to federal *habeas* relief for prisoners whose claims have been adjudicated in state court.").

> "[C]learly established Federal law" for purposes of § 2254(d)(1) includes only "the holdings, as opposed to the dicta, of this Court's decisions." *Howes v. Fields*, 565 U.S. ––––, ––––, 132 S. Ct. 1181, 1187, 182 L.Ed.2d 17 (2012) (quoting *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000)). And an "unreasonable application of" those holdings must be "objectively unreasonable," not merely wrong; even "clear error" will not suffice. *Lockyer v. Andrade*, 538 U.S. 63, 75–76, 123 S. Ct. 1166, 155 L.Ed.2d 144 (2003). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786– 787, 178 L.Ed.2d 624 (2011).

*White v. Woodall*, 134 S. Ct. 1697, 1702 (2014); *accord Smith v. Artus*, 610 F. App'x 23, 26 (2d Cir. 2015) (summary order). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits." *Greene*, 565 U.S. at 38 (citing *Cullen*, 563 U.S. at 181).

### 2. Petitioner's "Coerced Confession" Claim

Justice Kindler addressed Petitioner's coerced confession claim on its merits at the three-day suppression hearing and again in connection with Petitioner's motion to vacate his conviction under § 440.10. (Ex. 4; Ex. 20.) At the suppression hearing, the trial court considered Petitioner's own live testimony and the testimony of the officers and assistant district attorney who arrested and interviewed him. (Ex. 4.) The trial court also reviewed Petitioner's written statement in which he confessed to raping his daughter the previous day, consent forms signed by Petitioner, and Petitioner's 40-minute videotaped statement. (Ex. 4.) The trial court found no evidence of coercion, found law enforcement witnesses' testimony to be credible, and thus

necessarily found Petitioner's evasive and self-serving testimony[8] at the suppression hearing not credible, and inconsistent with the other evidence presented at the hearing. (Ex. 4 at 9–16.) There is simply nothing in the record to suggest that the state court's determination—that Petitioner's statements were voluntary—was an unreasonable determination of the facts in light of the evidence presented at the state court suppression hearing. 28 U.S.C. § 2254(d)(2).

Indeed, neither of Petitioner's statements was used at trial, even though the trial court found that such statements were not coerced. (Ex. 4 at 9–12.) Thus, contrary to Petitioner's assertion, his conviction was not "obtained by use of coerced confession." (Pet. at 25.) Further, although not raised in the Petition, there is no Constitutional violation with regard to Petitioner's sentencing. The prosecution sought the maximum sentence based on the depravity and brutality of the crimes for which Petitioner was convicted, which was 187-to-life on twelve charges to run concurrently with 175 years for the six rape and criminal sexual act charges. (S. 14–16.) Danielle's mother, in her victim impact statement, asked that Petitioner "be given no leniency, no mercy," and also asked the trial court to "let [Danielle] remember this day today . . . as a day that her voice was heard and that justice prevailed, proving once again that one person can make a difference." (S. 18.) At sentencing, Danielle took the stand again, asking the trial court "to send my father far away, and to never let him out . . . I'm so tired of being afraid all the time." (S. 19.)

At sentencing, Justice Kindler considered Petitioner's voluntary post-arrest statements, but relied principally on the evidence adduced at trial, including Danielle's testimony of Petitioner's abuse, photographs that Petitioner had taken of his daughter, and particularly the videotapes that Petitioner had made while raping his daughter, explaining that:

> Repeatedly, throughout the defendant's sexual predations, [Danielle] cried out in anguish, protested that she could not do what the defendant demanded, and told him it hurt. In one of the videos played for the jury, she cried again and again that she wanted to go home. But in each instance, the defendant persisted, until his needs were met. [Danielle] was utterly defenseless against the defendants' incessant assaults. The videotapes and photographs of these crimes, which were no doubt made so that they could be viewed again, were a further violation of [Danielle's] privacy, dignity and well-being . . . . The Court finds, based on all the evidence, including the compulsive behavior exhibited throughout the videotapes and the defendant's own admission,[9] in

---

[8] For example, at the suppression hearing, Petitioner claimed not to recall or know whether any facts in his written statement were true, (H. 197:6–16); claimed not to have signed his handwritten statement, (see H. 177:10–14; 178:1–4); and claimed not to remember the videotaped interview that had been played the previous day at the suppression hearing, in which he admitted (on video) to having been given his *Miranda* warnings, (H. 207:8–18), dressing his daughter in lingerie and taking pictures of her, (H. 216:6–12), and forcing his daughter to perform oral sex on him,(H. 215:3–14.)

[9] This was the only reference to Petitioner's post-arrest statements at sentencing.

11

> statements made after his arrest, that he was unable to control his
> behavior, that the defendant is likely to be a threat to Danielle and
> others in the future.

(S. 24–26.)

Moreover, Justice Kindler sentenced Petitioner to a statutorily permissible term, and did not sentence Petitioner to the maximum requested by the prosecution. (S. 26–30.) Given the facts of this case, and particularly Petitioner's repeated rapes of his child over a period of two years, and his documentation of those acts, the sentence imposed was not "disproportionate to the crime." *See United States v. Reingold*, 731 F.3d 204, 210 (2d Cir. 2013) (citing *Graham v. Florida*, 560 U.S. 48, 59 (2010) and *Harmelin v. Michigan*, 501 U.S. 957, 997–98 (1991) for Eighth Amendment proportionality analysis). As Justice Kennedy noted in *Harmelin*, "reviewing courts should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." 501 U.S. at 999 (internal quotations omitted). Thus, for noncapital crimes, the Eighth Amendment forbids "only extreme sentences that are grossly disproportionate to the crime." *Id*. at 1001. Sentences like this one, "falling within a legislatively prescribed term of years," will rarely be found to be grossly disproportionate. *Reingold*, 731 F.3d at 212.

Accordingly, even if Justice Kindler relied on Petitioner's written or videotaped statements in determining his sentence, Petitioner's sentence is not grossly disproportionate to the crime and does not violate the Eighth Amendment.

### 3. Petitioner's Ineffective Assistance of Counsel Claims

#### a. Exhaustion

Each factual claim made in support of an allegation of ineffective assistance of counsel must be fairly presented to a state court before a federal *habeas* court may rule upon it. *See Rodriguez v. Hoke,* 928 F.2d 534, 538 (2d Cir. 1991) (dismissing petition as unexhausted where petitioner's claim of ineffective assistance of counsel alleged more deficiencies before the *habeas* court than were presented to the state court, because "[t]he state courts should have been given the opportunity to consider all the circumstances and the cumulative effect of all the claims as a whole" (quotation omitted)). Where an additional factual claim in support of the ineffective-assistance allegation merely "supplements" the ineffectiveness claim and does not "fundamentally alter" it, dismissal is not required. *Caballero v. Keane*, 42 F.3d 738, 741 (2d Cir. 1994); *see also Wilson v. Breslin*, 217 F.R.D. 119, 124 (E.D.N.Y. 2003) (quoting *Caballero*, 42 F.3d at 741).

Here, Petitioner has alleged ineffective assistance of trial and appellate counsel, and virtually all of the factual claims were raised in the state court, both on direct appeal and in his motion to vacate his conviction. (Brief for Defendant Appellant, Ex. 11 at 28–43; Ex. 14.) Respondent suggests that trial counsel's failure to object to the prosecutor's comments at the suppression hearing was not exhausted. (Mem. of Law in Opp'n at 15, ECF 27.) Inclusion of this

additional factual allegation does not fundamentally alter Petitioner's ineffective assistance claim, however, and it can still be considered for the purpose of denying the claim on the merits under 28 U.S.C § 2254(b)(2).

b. The *Strickland* test

To prevail on his ineffective assistance of counsel claims, Petitioner must demonstrate that: (a) his counsel's performance "fell below an objective standard of reasonableness," and (b) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984). Under *Strickland,* there is a "strong presumption that [a lawyer's] conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Therefore, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana,* 350 U.S. 91, 101 (1955)). As the Second Circuit has noted, "[t]he *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Lindstadt v. Keane,* 239 F.3d 191, 199 (2d Cir. 2001).

*i. Ineffective Assistance of Trial Counsel*

The state court found that "[o]n the existing record, to the extent it permits review, we find that defendant received effective assistance [of trial counsel] under the state and federal standards . . . In any event, we also conclude that none of these acts or omissions, viewed individually or collectively, had a reasonable probability of affecting the outcome, depriving defendant of a fair trial, or obtaining a materially more lenient sentence. *People v. Perez*, 87 A.D.3d 930, 931 (1st Dep't 2011). Justice Kindler, in evaluating trial counsel's overall performance, found that counsel "represented defendant under difficult circumstances, given that the evidence against his client was overwhelming and conclusive and his client's conduct would be repellent to most anyone." (Ex. 20 at 14.)

Petitioner raises a plethora of alleged errors or omissions, all of which were addressed by Justice Kindler, and none of which satisfy either prong of *Strickland*. For example, Petitioner raises general allegations such as: failure to object to certain of the prosecution's statements, failure to challenge the authenticity of Petitioner's signatures or the court's jurisdiction, failure to establish or raise an alibi defense, failure to investigate, failure to participate in jury selection, and failure to introduce independent medical testimony (ostensibly to challenge Danielle's assertion and the emergency doctors' testimony that she had been repeatedly raped), among others. Even if Petitioner had established that such alleged errors and omissions had occurred, Plaintiff has not established that they "fell below an objective standard of reasonableness," nor that a "reasonable probability [exists] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 668, 688, 694.

Given all of the overwhelming evidence against him, including the testimony of his then-twelve-year-old daughter and the photographs and videotapes that Petitioner made to document his crimes, there is no indication that the state court's finding that Petitioner

13

received effective assistance of trial counsel was "contrary to, or involved an unreasonable application of" the *Strickland* standard.

### ii. Ineffective Assistance of Appellate Counsel

Petitioner's claim of ineffective assistance of appellate counsel appears to be limited to whether appellate counsel should have raised *People v. Alford*, 14 N.Y.3d 846, 847–48 (N.Y. 2010), in order to modify his sentence on certain counts to run concurrently, rather than consecutively. Appellate counsel raised an earlier decision in *Alford*, 65 A.D.3d 1392 (3rd Dep't 2009), to successfully vacate seven counts as lesser included offenses of other predatory sexual assault charges, but informed Petitioner not to expect any reduced sentence as a result, since the sentences on those counts were already running concurrently to sentences on the remaining predatory sexual assault convictions. (Correspondence, Ex. 8 at 2.) Petitioner's claim then, appears to be that even of the remaining claims, either: 1) the trial court should have used its discretion under Penal Law § 70.25(1) to impose sentences concurrently rather than consecutively, or 2) sentences on lesser included offenses or for multiple offenses committed through a single act "must" run concurrently, under Penal Law § 70.25(2).

Whether Petitioner's claim is based in subsection (1) or (2) of Penal Law § 70.25, his argument is without merit. The counts that constituted lesser included offenses were already running concurrently under Penal Law § 70.25(2) before they were vacated as a result of appellate counsel's advocacy. The remaining counts did not consist of multiple offenses committed through a single act because they specified multiple rapes and sexual assaults tied to particular dates or narrow date ranges in the course of the two years that Petitioner had been raping his child, and thus were not required to run concurrently under Penal Law § 70.25(2). Moreover, because Penal Law § 70.25(1) is discretionary, the outcome of Petitioner's sentencing would not have been different, whether or not appellate counsel explicitly sought modification of Petitioner's sentence to have additional terms run concurrently.[10] Justice Kindler's findings at sentencing, (*see* S. 21–30,) reflect his choice, in his discretion, to respect and support the requests by Danielle and her mother that Petitioner be given "no leniency, no mercy," (S. 18) and "to send my father far away, and to never let him out." (S. 19.)

Finally, as discussed above, the sentence imposed by Justice Kindler was permissible by statue and lower than the sentence requested by the State and thus does not violate the Eighth Amendment.

---

[10] Moreover, this Court finds that appellate counsel did seek a reduced sentence for Petitioner by making arguments that the sentence that was imposed, with multiple concurrent terms, was "unduly harsh and excessive." Thus, Petitioner's ineffective assistance of appellate counsel claim could also be denied on the merits for failure to identify an error or omission in appellate counsel's performance.

14

### IV. <u>Conclusion</u>

For the foregoing reasons, Petitioner's *habeas* petition should be denied. Furthermore, because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253(c)(2), a certificate of appealability should not be issued.

### V. <u>Objections</u>

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days (including weekends and holidays) from receipt of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). A party may respond to any objections within fourteen (14) days after being served. Such objections, and any responses to objections, shall be filed with the Clerk of Court, *Pro Se* Intake Unit, United States Courthouse, 500 Pearl Street, Room 200, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Torres.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS <u>WILL</u> RESULT IN A WAIVER OF OBJECTIONS AND <u>WILL</u> PRECLUDE APPELLATE REVIEW.** (*See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983)).

Respectfully submitted,

*s/ Ona T. Wang*

Dated: July 18, 2018                                           **Ona T. Wang**
New York, New York                              United States Magistrate Judge